UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - -x

UNITED STATES OF AMERICA                    :

         - against -                    :          **MEMORANDUM DECISION**

KEVIN M. TAMEZ,                             :          06 Civ. 3111 (DC)
                                                      03 Cr. 1439 (DC)
             Defendant.        :

- - - - - - - - - - - - - - - - - -x

**APPEARANCES:**    MICHAEL J. GARCIA, ESQ.
                    United States Attorney for the
                      Southern District of New York
                      By:  Serene K. Nakano, Esq.
                          Assistant U.S. Attorney
                    One Saint Andrew's Plaza
                    New York, New York  10007

                    KEVIN M. TAMEZ
                    Defendant <u>Pro</u> <u>Se</u>
                    USP Big Sandy
                    P.O. Box 2068
                    Inez, Kentucky  41224

**CHIN, D.J.**

       Defendant Kevin M. Tamez was the Associate Special
Agent in Charge ("A/SAC") of the New York Division of the Drug
Enforcement Administration ("DEA").  As A/SAC, Tamez was the
fourth highest ranking official in DEA's New York Division.  On
May 10, 2004, he pled guilty in this case to one count of
embezzling funds from DEA, one count of accessing government
computer systems for personal gain, and twenty-two counts of
theft of honest services from DEA by wire and mail fraud.  On May
5, 2005, after extensive delays requested by Tamez and his
counsel, the Court sentenced Tamez principally to thirty months'
imprisonment.

Now proceeding pro se, Tamez moves pursuant to 28 U.S.C. § 2255 to vacate, set aside, or correct his sentence on the grounds that: (1) he received ineffective assistance of counsel, (2) the Court erred in increasing his offense two levels for obstruction of justice pursuant to § 3C1.1 of the Sentencing Guidelines, and (3) the Court improperly sentenced him to the top of the Guidelines range based on purportedly false and misleading facts provided by the Government.  For the reasons that follow, the motion is denied.[1]

## BACKGROUND

### A.   The Facts

Tamez served as A/SAC in the New York Division of DEA from January 13, 2002, when he was promoted from Assistant Special Agent in Charge, until February 24, 2003, when he was suspended.  (PSR ¶¶ 7, 71; Niczyporowicz Decl. ¶ 8).[2]  As A/SAC, he was the fourth highest DEA official in the New York Division

---

[1]   Because I find that "it plainly appears from the face of the [section 2255] motion . . . and the prior proceedings in the case that [Tamez] is not entitled to relief," I do not order the United States Attorney to file a response to the instant motion.  See Rules Governing Section 2255 Proceedings for the U.S. Dist. Courts 4(b); Armienti v. United States, 234 F.3d 820, 822-23 (2d Cir. 2000).

[2]   References are as follows: "PSR" refers to the Presentence Report; "Niczyporowicz Decl." to the Declaration of Robert Niczyporowicz, dated April 21, 2005, submitted by the Government in connection with sentencing; "Gov't Br." to the Government's Sentencing Brief; "Plea Tr." to the transcript of the plea allocution on May 10, 2004; "Sen. Tr." to the transcript of the sentencing on May 5, 2005; "Plea Agmt." to the letter plea agreement dated April 26, 2004; and "Def. Mem." to Tamez's memorandum of points and authorities submitted in support of this motion.

and was in charge of operational support, including the
administrative, human resources, intelligence, and technical
operations units.  (PSR ¶ 7).  He was responsible for the
financial management of the New York Division.  (Id.).

Tamez engaged in two separate fraudulent schemes.
First, from December 1999 through February 2003, Tamez embezzled
approximately $138,488.24 from DEA.  (Gov't Br. at 2; PSR ¶¶ 1,
8-11).  He did so by submitting, or directing other DEA Special
Agents to submit, vouchers to DEA for cash and money orders
purportedly for DEA-related expenses, and then taking the monies
for his personal use.  (PSR ¶¶ 8-11).  As he admitted at his plea
allocution:

> THE DEFENDANT:  . . . I falsified or caused
> to be falsified some documents which I [used
> to] obtain[] funds for, U.S. government
> funds, and used them for personal use.
>
> THE COURT:  You caused -- you either
> submitted or caused to be submitted documents
> you knew to be false, correct?
>
> THE DEFENDANT:  That is correct, your Honor.
>
> THE COURT:  And you did that to obtain funds
> that belonged to the [DEA]?
>
> THE DEFENDANT:  That is correct, your Honor.
>
> THE COURT:  And you did that to take those
> monies for your own use?
>
> THE DEFENDANT:  That is correct, your Honor.
>
> THE COURT:  And you did that knowingly and
> with intent to defraud the DEA?
>
> THE DEFENDANT:  Yes, I did, your Honor.

(Plea Tr. 19-20).

- 3 -

Second, from January 2000 through July 2002, Tamez illegally used DEA personnel and resources to obtain information that he used for the benefit of a private investigation company that he had started, the MPM Group, Inc. ("MPM").  (Gov't Br. at 2; PSR ¶¶ 2, 12-69).  MPM had been retained by private attorneys and other clients to conduct certain investigations.  Tamez used his access to government computer systems and databases to run (or have run) criminal background and license plate checks; the information would then be turned over by MPM -- for a fee -- to its private clients.  (Plea Tr. 20-21; PSR ¶¶ 13-22).  In addition, Tamez repeatedly called other DEA agents or offices to serve subpoenas or to conduct surveillances or "trash runs," under the false pretense that they were for official DEA business.  (Plea Tr. 21-25; PSR ¶¶ 24-69).  Hence, DEA agents unwittingly provided services to Tamez, believing he was requesting their assistance for DEA-related business when he was using them for private and personal gain.

On February 24, 2003, Tamez met with DEA officials, who questioned him about certain suspicious transactions.  When the officials asked Tamez to explain two expenditures relating to an undercover website and an undercover apartment in the Bronx, he claimed that he could not remember the address for either the website or the apartment, nor could he remember who had paid for the apartment's rental.  (Niczyporowicz Decl. Ex. A at 2).  Tamez said that the purpose of the website was to "facilitate DEA operations," but could not recall whether anyone at the Division

had ever used it.  (Id.).  Tamez also said that he had knowingly
assigned expenditures to the wrong case number so that the New
York City Police Department ("NYPD") could use the funds to
establish undercover apartments and monitoring posts.  (Id.).  He
claimed that he was trying to help out the NYPD and "did not want
to get others involved."  (Id.).  Investigators later traced the
serial numbers on the postal money orders relating to these
purported expenditures and found that the money orders were made
payable to Tamez, his personal credit card account, and his son.
(Id. Exs. B & C).

        Following the meeting, Tamez was placed on
administrative leave.  (Id. Ex. A at 2).  He was escorted to his
office so that he could collect his personal belongings and was
left alone briefly.  (Id. at 6).  During those few minutes, he
deleted certain files from his DEA-issued laptop computer; a
forensic exam of Tamez's laptop later showed that certain America
Online ("AOL") files, including some relating to the AOL screen
name "thempmgroup," were deleted from the laptop between 6:31 and
6:33 p.m. that day.  (Id. Ex. E).  Some of the deleted data was
unrecoverable and some was recovered but was unreadable; the
forensic examiner could not conclude that all of the data was
recovered.  (Id. at 7, Exs. D & F).

**B.   Prior Procedings**

        Tamez was originally charged in this case in 2003 in a
sixty-one count indictment.  After extended plea negotiations
with the Government, he pled guilty on May 10, 2004, pursuant to

a plea agreement, to a superseding information charging him with one count of embezzlement, one count of accessing government computer systems for private financial gain, twenty-one counts of theft of honest services by wire, and one count of theft of honest services by mail.  (Plea Tr. 10-13, 19-30).

Tamez agreed to pay DEA restitution of $154,959.24 and to forfeit $151,439.24 to the United States.  (Plea Agmt. at 3).  The agreement contained no stipulated Guidelines sentencing range.  It contained only a limited waiver of the right to appeal: Tamez waived his right to appeal any restitution order equal to or less than $154,959.24 as well as his right to appeal his conviction based on the grounds that the Government failed to produce discovery, Jencks Act material, or exculpatory material.  (Id. at 3, 4-5).

In the PSR, the Probation Department determined that the appropriate sentencing range under the Guidelines was 24 to 30 months and recommended a sentence of 24 months.  (PSR at 31).  The total offense level of 17 was based on a base offense level of 6, with a 3-level reduction because of Tamez's acceptance of responsibility and enhancements for the following: (1) loss exceeding $120,000 but less than $200,000 (10 levels); (2) Tamez's use of his position at DEA to facilitate the offense (2 levels); and (3) obstruction of justice (2 levels).  (Id. at 20, 21).  The enhancement for obstruction of justice was based on the Government's assertion that Tamez made false statements to DEA management during the meeting on February 24, 2003, and that

- 6 -

following the meeting, after being placed on administrative leave, Tamez deleted AOL files from his laptop, including files using the AOL screen name "thempmgroup."  (Id. at 16).

By letter dated September 15, 2004, Tamez, through counsel, objected to the PSR.  Among other things, Tamez claimed that he did not make false statements during the February 24 meeting, and that his deletion of AOL files from his laptop was "localized" and thus did not prevent the Government from accessing those files.  Furthermore, he claimed that his deleting the AOL files was necessary to return the laptop in the condition in which it was issued, in accordance with DEA policy.  Tamez reiterated these objections in his own letter dated April 27, 2005, which was fifteen single-space pages and to which were attached some twenty-three exhibits.

I sentenced Tamez on May 5, 2005.  At the outset, I noted that I had received and reviewed "quite a lot of materials," and I inquired whether the parties wanted to present "any other evidence."  (Sen. Tr. 2-3).  Both sides declined. (Id. at 4).

The parties agreed on a base offense level of 6, a 10-level increase for loss amount, and a 2-level increase for Tamez's use of his position at DEA.  (Id. at 3-4).  The parties disagreed on four issues: (1) a 2-level increase in offense level for obstruction of justice; (2) a 3-level reduction for acceptance of responsibility; (3) Tamez's motion for a downward departure for reduced mental capacity; and (4) the Government's

motion for an upward departure for disruption of a government function.  (Id. at 4).

As to the obstruction of justice enhancement, I held as follows:

> I am going to impose the two-level adjustment for obstruction of justice.  I find that Mr. Tamez acted with the specific intent to obstruct justice during the February 24, 2003 meeting when he made false statements to the DEA officials who were interviewing him, and also with respect to the laptop. . . . From reading both Agent Placido's memo of the meeting and Agent Walker's memo of the meeting, I don't think they are that different.  It's clear to me that what Mr. Tamez was doing was he was trying to admit to some wrongdoing, including violating the rules regarding the paperwork, but he was trying to avoid getting to the real heart of it, and I think that he did state, at least implicitly, if not explicitly, that he had used the money to help the NYPD in undercover operations when in fact the money orders in question were made payable to him and were deposited into his account, and it just happened relatively recently.  It's not something that he could have forgotten, and I do believe he was trying to mislead.
>
> With respect to the computer, I don't know what the DEA policy is, but it does not make sense that you have the obligation to remove or delete personal information if the information might be evidence of a crime.  Here, certainly the screen name, the MPM Group, had evidentiary value given the timing of it.  It required two or three minutes to do this, I believe.
>
> And I so find that Mr. Tamez was acting with the intent to obstruct.  Accordingly, I will increase the offense level by two.

(Id. at 12-13).

I then granted the 3-level downward adjustment for acceptance of responsibility, rejecting the Government's argument that Tamez had not accepted responsibility.  (Id. at 14; see Gov't Br. at 13).  Accordingly, I held that the final offense level, before considering departure motions, was 17; the criminal history category was I; and the Guidelines range was 24 to 30 months.  (Sen. Tr. 14).

I rejected Tamez's downward departure motion, concluding: "I am not at all persuaded that Mr. Tamez's mental capacity was significantly reduced to such an extent that he could not understand the wrongfulness of the conduct, or to the extent that he could not control his behavior."  (Id. at 22).

I did not expressly grant the Government's motion for an upward departure for disruption of a government function, but I observed as follows:

> I certainly think there is a basis for the motion.  Many DEA agents were unwittingly brought into Mr. Tamez's scheme, doing paperwork to help him get the cash, going to the post office to buy money orders for him, spending the time [] benefitting not the government or the DEA but his company, his company's clients, and clearly there was an adverse impact on the DEA's name and reputation.

(Id.).

I then sentenced Tamez to thirty months' imprisonment. (Id. at 23).  In doing so, I commented as follows:

> [Mr. Tamez] asks me through counsel to look beyond his failure.  I simply can't do that. I think that what Mr. Tamez here did was doubly dishonest.  First, he stole money from the government, almost $140,000.  But second,

- 9 -

he involved numerous innocent agents and
often these were junior agents who knew that
they were being asked to do something
irregular but who felt they could not say no
to the associate special agent in charge, the
fourth highest ranking DEA official in the
New York division.  Mr. Tamez's conduct goes
really to the integrity of the system of
administering justice.  There was a
tremendous loss of trust here and he has to
be held accountable.

(Id. at 23).

I also sentenced Tamez to three years' supervised

release. imposed the mandatory special assessment of $100 per

count, and ordered restitution in the amount of $154,959.24 and

forfeiture in the amount of $151,439.24.  (Id. at 23-25).

At the conclusion of the proceedings, I advised Tamez:

[Y]ou have the right to appeal this
judgment and sentence.  To the extent that
you wish to appeal, you must do so within ten
days.  If you cannot afford an attorney, one
will be provided for you without cost.

(Id. at 26-27).

Tamez did not appeal.  On April 24, 2006, he filed the

present motion, on a timely basis.[3]  On September 20, 2006, he

submitted a supplemental memorandum in further support of the

motion.

---

[3]     Under the Anti-Terrorism and Effective Death Penalty
Act ("AEDPA"), a defendant has one year to file a § 2255 motion.
28 U.S.C. § 2255.  Except in circumstances inapplicable here,
AEDPA's limitation period commences on "the date on which
[defendant's] judgment of conviction becomes final."  Id.  "[F]or
purposes of § 2255 motions, an unappealed federal criminal
judgment becomes final when the time for filing a direct appeal
expires."  Moshier v. United States, 402 F.3d 116, 118 (2d Cir.
2005).  Here, because no appeal was taken, Tamez's conviction
became final ten days after May 6, 2005, the date his judgment
was entered.  Therefore, his April 24, 2006 motion is timely.

## DISCUSSION

Tamez's claims are rejected, for they are procedurally defaulted and/or without merit.  I address each of his claims after discussing the legal standards applicable to this motion.

## A.  General Legal Standards

To prevail on a § 2255 motion, a defendant must demonstrate that "the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack."  28 U.S.C. § 2255; see also United States v. Addonizio, 442 U.S. 178, 185 (1979); Davis v. United States, 417 U.S. 333, 346 (1974) (explaining that relief under § 2255 is available for defects that are constitutional, jurisdictional, or in some other respect fundamental).

The Supreme Court has consistently held that "an error of law does not provide a basis for collateral attack unless the claimed error constituted 'a fundamental defect which inherently results in a complete miscarriage of justice.'"  Addonizio, 442 U.S. at 185 (quoting Hill v. United States, 368 U.S. 424, 428 (1962)); Hardy v. United States, 878 F.2d 94, 97 (2d Cir. 1989).  Indeed, "to obtain collateral relief [under § 2255] a prisoner must clear a significantly higher hurdle than would exist on direct appeal."  United States v. Frady, 456 U.S. 152, 166 (1982)

(quoted in Lucas v. United States, 963 F.2d 8, 14 (2d Cir. 1992)).

Generally, claims not raised on direct appeal by federal prisoners are procedurally defaulted and "may not be raised on collateral review unless the petitioner shows cause and prejudice." Massaro v. United States, 538 U.S. 500, 504 (2003); see also United States v. Pipitone, 67 F.3d 34, 38 (2d Cir. 1995); DeFeo v. United States, 153 F. Supp. 2d 453, 457 (S.D.N.Y. 2001). Ineffective assistance claims, however, may be raised on a motion pursuant to § 2255, see Massaro, 538 U.S. at 508; DeFeo, 153 F. Supp. 2d at 457, as "[i]neffective assistance of counsel . . . is cause for a procedural default." Murray v. Carrier, 477 U.S. 478, 488 (1986).

**B.   Tamez's Claims**

Tamez asserts three claims in this motion: (1) he received ineffective assistance of counsel, (2) the Court erred in increasing his offense two levels for obstruction of justice, and (3) the Court improperly sentenced him to the top of the Guidelines range. As the ineffective assistance claim is based primarily on the other two claims, I discuss the second and third claims first.

**1.   Obstruction of Justice**

Tamez's claim that the Court improperly increased his offense level 2 levels for obstruction of justice is procedurally barred, because he did not raise the claim on direct appeal. Indeed, although he was advised at sentencing of his right to

appeal, he did not appeal.  Tamez raised this claim at
sentencing, and he has not shown any cause why he could not have
raised the claim on direct appeal.  Even assuming that Tamez
could show cause, he has not shown any prejudice because, as
discussed below, he has failed to demonstrate that the claim has
any merit.

Tamez contends that the 2-level enhancement for
obstruction of justice, pursuant to § 3C1.1 of the Sentencing
Guidelines, was improper because: (1) his statements at the
February 24 meeting amounted to nothing more than a denial of
guilt and thus could not form the basis for an obstruction
enhancement; and (2) the Government failed to prove that (a) he
willfully intended to obstruct justice when he deleted AOL files
from his DEA-issued laptop, and (b) his deletion of those files
significantly obstructed or impeded the Government's
investigation.

First, Tamez's claim fails because he does not present
a constitutional issue or a "complete miscarriage of justice."
See Bretan v. United States, No. 05 Civ. 0916 (LAK), 2006 WL
238994, at *1 (S.D.N.Y. Jan. 31, 2006) (quoting Graziano v.
United States, 83 F.3d 587, 589-90 (2d Cir. 1996)) ("[N]either an
erroneous imposition of the upward adjustment . . . nor an
erroneous choice of the applicable guideline, if either occurred,
would have resulted in a constitutional error or 'a complete
miscarriage of justice.'").  Rather, he complains merely that the

Court erred in applying the 2-level increase for obstruction of justice.

Second, Tamez's reliance on the "USSG § 3C1.1(2) 'exception' as well as the 'Exculpatory No" doctrine'" (Def. Mem., Add. A at 1) is misplaced.  Application Note 2 to § 3C1.1 of the Sentencing Guidelines provides: "This provision is not intended to punish a defendant for the exercise of a constitutional right.  A defendant's [unsworn] denial of guilt . . . is not a basis for application of this provision."  U.S. Sentencing Guidelines Manual § 3C1.1 application note 1 (2005). The DEA memoranda of the February 24 meeting, however, show that Tamez's statements went beyond a simple denial of guilt protected by the "exculpatory no" doctrine; rather, his statements were affirmatively misleading -- he falsely stated that the funds were misappropriated to help the New York Police Department establish undercover operations.  (Niczyporowicz Decl., Ex. A at 2; Tamez Letter dated 4/27/2005 to Court, Ex. A at 2).  The obstruction of justice enhancement was thus appropriate.  See, e.g., United States v. McKay, 183 F.3d 89, 96 (2d Cir. 1999) (defendant's concocted story downplaying his role in crime was more than denial of guilt and warranted enhancement).

Third, Tamez's argument that the Government failed to prove that his deletion of AOL files rose to the level of obstruction of justice is without merit.  Section 3C1.1 provides that a 2-level enhancement applies if the defendant "willfully obstructed or impeded . . . the administration of justice."  U.S.

Sentencing Guidelines Manual § 3C1.1 (2005).  The enhancement "is mandatory once its factual predicates have been established." United States v. Friedman, 998 F.2d 53, 58 (2d Cir. 1993). Further, under Application Note 4(d) to § 3C1.1, "destroying or concealing . . . evidence that is material to an official investigation . . . or attempting to do so" is conduct amounting to obstruction of justice.  U.S. Sentencing Guidelines Manual § 3C1.1 application note 4(d) (2005).  I specifically found at sentencing that Tamez had "acted with the specific intent to obstruct justice . . . with respect to the laptop."  (Sen. Tr. 12).  This finding was supported by both the submissions of the parties and the PSR.

         Tamez does not deny deleting certain matters from his laptop, but contends that he only deleted his personal AOL "screen name and password menu," that he did so only so that his "replacement would not have access to his personal screen name and/or password information, and that he was merely trying to comply with DEA policy requiring equipment to be returned in the condition in which it was issued.  (Def. Mem., Add. B at 3).  The explanation is false and in any event makes no sense.  The forensics examination showed that far more than just a screen name and password menu were deleted; three entire AOL folders were deleted on February 24, 2003, between 6:31 and 6:33 p.m. (Niczyporowicz Decl., Ex. E).  Tamez's contention that he deleted the matters to return the computer in the condition in which it was issued is patently absurd.  The AOL files obviously contained

information relating to the MPM Group, and he was intentionally seeking to destroy this evidence to interfere with the investigation.  By deleting the files -- some of which have not been recovered in usable form or at all -- he impeded the Government's investigation.

Finally, Tamez also complains that the Court did not conduct an evidentiary hearing and that he had no opportunity, for example, to cross-examine the Government's forensics computer expert.  The complaint is misplaced.  First, the parties submitted a full evidentiary record.  Tamez submitted his own "personal letter," together with numerous exhibits.  Second, at the outset of the sentencing, I asked whether the parties wanted to present any additional evidence, and both sides declined. Hence, Tamez could have asked for a hearing with witnesses, but he did not make such a request.

For the above reasons, Tamez's attack on the obstruction enhancement is rejected.

### 2.   Term of Imprisonment

Tamez claims that a sentence of thirty months -- which he describes as the top of the range -- was improper because it was based on inaccurate and false information provided by the Government.

As an initial matter, this claim is also procedurally barred because Tamez did not raise the claim on direct appeal. He did not appeal at all.

Moreover, the claim fails on the merits.  First, it is not clear that thirty months was the top of the range.  The Guidelines range, before I considered the parties' departure motions, was indeed 24-30 months.  (Sen. Tr. 14-15).  I eventually denied Tamez's downward departure motion, concluding that I was not persuaded that he acted with diminished mental capacity.  (Id. at 22).  Unfortunately, I was less than precise as to the Government's upward departure motion.  Although I clearly stated that the motion had merit, I did not explicitly state that I was granting it, nor did I explicitly state that I was increasing the offense level on that basis.  (Id.).  Rather, taking all circumstances into account, I imposed a sentence of thirty months.  I did not specify whether the thirty months was the top of the range at level 17 or whether it was somewhere else within the range at a higher offense level.  (Id. at 23).  Clearly, however, I believed that Tamez deserved a thirty-month sentence, and whether it was the top of the range or not was not important.

Second, even assuming thirty months was the top of the range, it was well within my discretion to impose the top of the range.  The sentence was still within the range recommended by the Probation Department in the PSR, and it was well below the statutory maximum of twenty years.  (PSR ¶¶ 110-12).  See, e.g., Carabajal v. United States, No. 99 Civ. 1916 (MGC), 2004 WL 2283658, at *6 (S.D.N.Y. Oct. 8, 2004) ("There is no constitutional violation where a sentence is within the range

- 17 -

prescribed by statute."); <u>Gomez v. United States</u>, No. 99 Civ.
2409 (DC), 2000 WL 426398, at *3 (S.D.N.Y. Apr. 20, 2000) (no
miscarriage of justice where imposed sentence was within
presentence report's recommended range and range stipulated in
plea agreement). Indeed, given that Tamez was such a high-
ranking law enforcement official who so egregiously betrayed the
public trust, I was tempted to impose a higher sentence, but
refrained from doing so in recognition of his twenty-five years
of service to the public and other mitigating factors.

Third, I reject Tamez's contention that the Government
made false and misleading misrepresentations. Again, I had a
full record before me. Tamez gave me a detailed explanation of
his version of the facts. Some of his statements clearly were at
odds with the Government's representations, but I was persuaded
that the Government's representations were correct and forthright
and that Tamez's representations -- to a great extent -- were
not. Clearly, he was trying to minimize his culpability, and
much of what he said simply did not have the ring of truth to it.

The sentencing proceeding was not "infected with any
error of fact or law of the 'fundamental' character [to] render[]
the entire proceeding irregular and invalid." <u>See</u> <u>Addonizio</u>, 442
U.S. at 186. Because Tamez has not demonstrated a constitutional
error or a "complete miscarriage of justice," his claim
challenging the thirty-year term of imprisonment is denied. <u>See</u>
<u>id.</u>

### 3.   Ineffective Assistance of Counsel

Tamez's ineffective assistance of counsel claim is not procedurally barred and I consider it on the merits.  He makes two essential claims: (1) counsel was ineffective in his sentencing advocacy, including, in particular, with respect to the issues discussed above, and (2) counsel "failed to pursue a direct appeal."  (Def. Mem., Add. A at 1-4).

### a.   Sentencing Issues

To prove ineffective assistance of counsel, Tamez must show that his counsel's performance fell below an objective standard of reasonableness under prevailing professional norms, and that he was prejudiced by his counsel's deficient performance.  See Strickland v. Washington, 466 U.S. 668, 686-88 (1984); United States v. Vegas, 27 F.3d 773, 776 (2d Cir. 1994).  When applying the Strickland test, "judicial scrutiny of counsel's performance must be highly deferential."  Strickland, 466 U.S. at 689.  "The court's central concern is not with 'grading counsel's performance,' . . . but with discerning 'whether despite the strong presumption of reliability, the result of the particular proceeding is unreliable because of a breakdown in the adversarial process that our system counts on to produce just results.'"  United States v. Aguirre, 912 F.2d 555, 561 (2d Cir. 1990) (quoting Strickland, 466 U.S. at 696-97).

Tamez contends that the enhancement for obstruction of justice and his term of imprisonment are "directly attributable to ineffective assistance of counsel."  (Def. Mem., Add. A at 1).

To the contrary, throughout the proceedings, Tamez's counsel, Peter T. Sheridan, objected to the enhancement and sought a term of imprisonment of less than twenty-four months, both in letters objecting to the PSR, in a motion for a downward departure, and at the sentencing itself.[4]  (See Sen. Tr. 6-12).  I rejected the arguments not because of the quality of counsel's representation, but because I disagreed with the arguments on the merits. Indeed, Sheridan represented Tamez vigorously and capably throughout the case.  His representation did not fall below the bar of "objective reasonableness."  See Strickland, 466 U.S. at 689.  That I did not impose a sentence greater than thirty months is due in no small measure to the points he made on behalf of Tamez.

Moreover, even assuming counsel's performance was somehow deficient, Tamez was not prejudiced.  I considered Tamez's arguments in connection with sentencing carefully and rejected them, and there is nothing now that Tamez contends that counsel overlooked.  This aspect of Tamez's motion is therefore denied.

### b.  **Failure To Appeal**

Finally, Tamez argues that his attorney was ineffective because he did not file a notice of appeal.

---

[4]     Sheridan raised these arguments in letters to the Court dated September 15, 2004 and April 3, 2005.  In fact, in the April 3, 2005 letter, Sheridan argued that the Court had a sufficient basis to sentence Tamez to a term of probation instead of imprisonment, combined with community service, a reasonable fine, and $100 in special assessments.

The Supreme Court has held that under <u>Strickland</u>, counsel has a duty "to consult with the defendant about an appeal when there is reason to think either (1) that a rational defendant would want to appeal (for example, because there are nonfrivolous grounds for appeal), or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing." <u>Roe v. Flores-Ortega</u>, 528 U.S. 470, 480 (2000). The Second Circuit has held that "[e]vidence that a defendant sufficiently demonstrated to counsel his interest in an appeal, when taken alone, is 'insufficient to establish that, had the defendant received reasonable advice from counsel about the appeal, he would have instructed his counsel to file an appeal.'" <u>Sarroca v. United States</u>, 250 F.3d 785, 789 (2d Cir. 2001) (quoting <u>Flores-Ortega</u>, 528 U.S. at 486). If counsel's performance, however, deprives a defendant of an appeal that he otherwise would have taken, he has been denied effective assistance of counsel, and is entitled to appeal. <u>Muniz v. United States</u>, 360 F. Supp. 2d 574, 581 (S.D.N.Y. 2005) (citing <u>Sarroca</u>, 250 F.3d at 787). Thus, Tamez must prove that "but for counsel's deficient conduct, he would have appealed." <u>Flores-Ortega</u>, 528 U.S. at 486.

In determining whether a reasonable defendant would have appealed, the Supreme Court has held:

> Although not determinative, a highly relevant factor . . . will be whether the conviction follows a trial or a guilty plea, both because a guilty plea reduces the scope of potentially appealable issues and because such a plea may indicate that the defendant

> seeks an end to judicial proceedings.  Even
> in cases when the defendant pleads guilty,
> the court must consider such factors as
> whether the defendant received the sentence
> bargained for as part of the plea and whether
> the plea expressly reserved or waived some or
> all appeal rights.  Only by considering all
> relevant factors in a given case can a court
> properly determine whether a . . . particular
> defendant sufficiently demonstrated to
> counsel an interest in an appeal.

Id. at 480.

Thus, the harm that Flores-Ortega seeks to avoid is when counsel does not consult; when "it is impossible to determine . . . whether [counsel] advised respondent about the advantages and disadvantages of taking an appeal and made a reasonable effort to discover his wishes." Id. at 487.  The constitutional duty imposed by Flores-Ortega on counsel is only to "consult with the defendant about an appeal  . . . when the defendant reasonably demonstrated to counsel that he was interested in appealing." Flores-Ortega, 528 U.S. at 480.  It is not enough merely for a defendant to "express[] some interest in appealing." Sarroca, 250 F.3d at 789 (citing Flores-Ortega, 528 U.S. at 486).

Here, Tamez has not alleged that he instructed counsel to appeal, nor has he alleged that counsel failed to consult with him about appealing.  (Def. Mem., Add. A at 4).  Rather, Tamez merely states, in conclusory fashion, that counsel "failed to pursue a direct appeal." (Id.).  Hence, there is nothing in the record to suggest that Tamez "reasonably demonstrated to counsel

that he was interested in appealing."  Flores-Ortega, 528 U.S. at 480.

Moreover, Tamez pled guilty, acknowledging that he was guilty, thereby indicating a desire to end the case.  Tamez was explicitly advised at the end of the sentencing proceedings that he had the right to appeal, and he surely understood that he had the right to appeal if he wanted to.  He surely understood that he could instruct his attorney to file a notice of appeal, and apparently did not do so.  In addition, there were no meritorious issues to appeal.  Accordingly, Sheridan had no reason to think that Tamez would want to appeal.  See Flores-Ortega, 528 U.S. at 480; see, e.g., Sarroca, 250 F.3d at 787-88 (counsel was reasonable in not filing notice of appeal where defendant pleaded guilty and never requested or authorized counsel to file notice of appeal).

Finally, Tamez has not demonstrated any prejudice as a result of Sheridan's failure to file a notice of appeal.  Tamez has not identified any nonfrivolous arguments that he could have raised on appeal.  See Flores-Ortega, 528 U.S. at 480; Muniz, 360 F. Supp. 2d at 581.  Moreover, with his law enforcement and educational background, Tamez could have filed a notice of appeal on his own.  Indeed, he submitted his own personal, lengthy letter at sentencing and he has made the instant motion pro se. Accordingly, this aspect of his ineffective assistance of counsel claim is denied as well.

**CONCLUSION**

For the forgoing reasons, the motion pursuant to 28 U.S.C. § 2255 is denied. Because Tamez has not made a substantial showing of the denial of a constitutional right, I decline to issue a certificate of appealability. See 28 U.S.C. § 2253 (1996) (as amended by the Antiterrorism and Effective Death Penalty Act). I certify pursuant to 28 U.S.C. § 1915(a)(3) that any appeal taken from this decision would not be taken in good faith.

The Clerk of the Court shall close this case.

SO ORDERED.

Dated:     New York, New York
           October 5, 2006

DENNY CHIN
United States District Judge

- 24 -